IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI E. LONG, | : | CIVIL ACTION NO. **3:CV-06-578** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 1383(c)(3), wherein the Plaintiff, Lori E. Long, is seeking review of the decision of the Commissioner of Social Security (Commissioner)[1] that denied her claim for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1383(f).

## I. PROCEDURAL HISTORY.

The Plaintiff filed an application for SSI on February 17, 2004, alleging an inability to work since December 10, 1993, due to lupus, chronic fatigue syndrome, herniated discs, muscle/ joint pain, carpal tunnel syndrome, chronic sinus infections and irritable bowel syndrome (IBS). (R. 117-20, 131). Her claims were denied, and a timely request for a hearing was filed. A hearing was conducted before an Administrative Law Judge (ALJ) on July 14, 2005. The Plaintiff, represented by her attorney, and Vocational Expert (VE) George Starosta testified at the hearing. (R. 51-79). A supplemental hearing was held before the ALJ on December 1, 2005. (R. 24-50). At the supplemental hearing, Plaintiff, VE Nadine Henzes and Medical Expert (ME) Lee Besen, M.D., testified. (R. 24-50). Plaintiff was subsequently denied benefits pursuant to the ALJ's decision of December 20, 2005. (R. 9-19). The ALJ issued a decision finding that Plaintiff was not disabled under the Act. The

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the Defendant herein.

Plaintiff requested review of the ALJ's decision by the Appeals Council.   (R. 7-8).  Said request for review was denied, thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g).  That decision is the subject of this appeal.  (R. 4-6).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 8 & 9).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff is not disabled within the meaning of the Social Security Act. (R. 12-19). In reaching this determination, the ALJ first found that Plaintiff has no past relevant work experience. (R. 13, 17). At step two, the ALJ concluded from the medical evidence

3

that Plaintiff's impairments, chronic low-grade pain described as parethesias or generalized mild arthralgias, gastroesophageal reflux disease (GERD), and IBS, were severe impairments, in combination, within the meaning of the Regulations.  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (R. 15).  The ALJ paid particular attention to Sections 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), 14.00 (Immune System), 14.02 (Systemic lupus erythematosus), 14.09 (Inflammatory arthritis), 5.00 (Digestive System) and 5.08 (Weight loss due to any persisting gastrointestinal disorder).  20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.02, 1.04, 14.00, 14.02, 14.09, 5.00, 5.08.  (R. 15-16).  In making her determination, the ALJ also considered Plaintiff's subjective complaints and limitations pursuant to Social Security Ruling 96-7p.  (R. 16).

At step four, the ALJ found that Plaintiff has no past relevant work history.  (R. 17).  Accordingly, the ALJ moved on to step five and determined that Plaintiff retained the RFC to perform work at the sedentary level.  (R. 16).   Specifically, the ALJ found that Plaintiff had the ability to sit six out of eight hours, stand and walk two out of eight hours, with a sit/ stand option, lift ten pounds occasionally and five pounds frequently, could perform no bending or extensive reaching, and was limited to one to two step jobs.  (R. 17).

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(f), 416.920(f).  This final step requires an analysis of whether the Plaintiff, based on her age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing

other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on the testimony of impartial vocational experts, the ALJ concluded that, considering the Plaintiff's age, educational background, work experience and RFC, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 23).  Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as a video monitor, a machine tender, and as a telephone receptionist.  (R. 18).  Thus, Plaintiff was found to be not disabled.  (R. 18-19).

The relevant time period for this case is December 10, 1993, the alleged onset date of disability, through December 20, 2005, the date of the ALJ's decision.

## IV.  BACKGROUND.

### A.  Factual Background.

The Plaintiff, forty-one years old at the time of her alleged disability onset, was considered to be a "younger individual" under the Regulations.  (R. 13).  20 C.F.R. § 416.963(c).  She has a high school education and training in cosmetology.  (R. 13, 55, 137).  Plaintiff alleged a disability onset date of December 10, 1993.  (R. 13).

Plaintiff testified that her lower back, severe pain on her left side, pain in her bones, joints and muscles, IBS, sinus infections, and a growth in her throat have precluded her from working.  (R. 56).  Plaintiff stated that she takes an anti-inflammatory, Mobic, and underwent therapy to treat her back.  (R. 56-57) .  She also takes Lotranex and Nexium for her IBS and stomach.  (R. 62-64).  Plaintiff testified that the IBS medications help control her symptoms, though not completely.  (R. 63-64).

Plaintiff described her low back pain as a constant grinding and throbbing on her nerves causing her legs to tingle.  (R. 58).  She stated that she has pain in the area between

her waist and buttocks from the back to the front and then down her leg to her knees and ankles. (R. 58-59). Plaintiff testified that certain ways of sitting, prolonged standing or walking exacerbate her pain. (R. 59). She described the pain in her leg as "steady, constant, burning, sensational." (R. 59). Plaintiff also testified that she has carpal tunnel syndrome in her arms, pain in her elbows, wrists and shoulders and she suffers from arthritis. (R. 60). Plaintiff testified that she was initially diagnosed with lupus, however this diagnosis was subsequently changed. (R. 30, 60). She stated her right hand shakes at times and she has trouble reaching and difficulty with mobility. (R. 61). Additionally, Plaintiff testified that she suffered from an upper stroke. (R. 61). Plaintiff testified that in the two years prior to the July 2005 ALJ hearing her symptoms got worse. (R. 76). Her pain increased and her ability to do activities decreased. (R. 76).

Plaintiff also testified that she is allergic to dust mites and takes Zyrtec B and Singulair to treat her allergies. (R. 64-65). Plaintiff's sinus infections cause headaches approximately once a month, sometimes more. (R. 65). She takes Tylenol for her headaches and lays down or takes a hot bath to alleviate them. (R. 65). Plaintiff testified that the Tylenol helps with her headaches. (R. 66). Plaintiff also stated that she has asthma and a chronic drip. (R. 69). She uses an inhaler to help treat the asthma. (R. 69-70). She is unable to lay down flat and has to be propped up. (R. 71). Plaintiff testified that she is able to sit for fifteen to thirty minutes at a time. (R. 71). She is able to walk down the street and walk the mall without stopping. (R. 71-72). Plaintiff testified that she is able to lift and carry as much as a gallon of milk, though at times it is painful to do so. (R. 72).

Plaintiff lives with her husband and five children. (R. 66). At home, Plaintiff has trouble with vacuuming, scrubbing the floors, cooking and walking the dogs. (R. 66-67). She testified that she cooks most of the time and does the grocery shopping, though lately she takes one of her older sons to help push the grocery cart and carry the bags. (R. 68). Plaintiff testified that the grocery cart helps with walking and she can push it when it is

empty, but when the cart gets heavier she needs help. (R. 68). Plaintiff does the laundry with the help of her sons. (R. 69). She is able to change the sheets on her bed. (R. 69). Plaintiff's older sons also clean the kitchen floor and her husband and sons do the yard work. (R. 68). Plaintiff testified that she is able to squat down and pick up one of their dogs, but when she gets back up she experiences pain in her nerves and becomes paralyzed. (R. 67). Plaintiff testified that she goes to bed around 9:00 p.m. or 10:00 p.m. and wakes up at 6:00 a.m. or 7:00 a.m. (R.. 67). Plaintiff showers, makes breakfast for herself and her children and sees her children off to school. (R. 67). She then stays home with her youngest child and cleans her room and the children's bedrooms. (R. 68).

Plaintiff testified that if she worked, she would likely miss half the time, or more, per month due to her symptoms. (R. 76).

Vocational Expert George Starosta testified at the ALJ hearing on July 14, 2005. (R. 77-78). He testified that if Plaintiff's testimony was found to be credible and supported by the medical record, there would not be any jobs that she could do on a regular basis. (R. 78). However, the ALJ declined to ask the VE any questions until Plaintiff's updated MRI's were received into evidence. (R. 78-79).

Once the medical records were updated, a supplemental ALJ hearing was held on December 1, 2005. (R. 26-50). Plaintiff briefly testified as to changes in her symptoms. She testified that her IBS symptoms get worse during her monthly menstrual cycle. (R. 28). She also testified that her Lotranex dosage was increased. (R. 28).

Medical Expert Dr. Lee Besen questioned Plaintiff and testified at the hearing. (R. 29). Dr. Besen stated that Plaintiff's MRI's were not terribly impressive as to any major pathology and the January 2005 MRI "just merely showed some bulging disks which probably if we did 100 MRI's on the average American without back pain would have – probably 50 percent would, indeed, have a bulging disk without question." (R. 29). Dr. Besen indicated that there is mild to moderate bilateral foramina stenosis at the L5-S1 level

that increased in size, but it is not significant. (R. 38-40). He stated that this could cause pain in the low back and legs. Dr. Besen stated that Plaintiff was diagnosed with intermittent myofascial pain syndrome, chronic cervical/ lumbar degenerative disc disease and IBS. (R. 42).

Plaintiff testified that she has pain in her shoulders, elbows, wrists, hips, knees and ankles and carpal tunnel in her arms. (R. 29). She also testified that she has pain in her right hip that may be a result of her disc and nerve damage. (R. 30-31). She stated that she experienced pain in between her shoulder blades and back causing difficulty breathing and difficulty lifting. (R. 30). Plaintiff also revealed that she no longer has lupus. (R. 30).

Plaintiff testified that she takes Zyrtec D, Afrin and Flonase for her sinuses; Advair for breathing; Lotranex and Nexium for her stomach and colon; and Tylenol and Mobic for her body aches and inflammation. (R. 31-32).

Dr. Besen testified regarding Plaintiff's medical records beginning in 2003. (R. 33). Dr. Besen testified that Plaintiff's primary problems are rheumatologic. (R. 34). He does not believe that her IBS or allergic rhinitis are debilitating. (R. 34). He believes her asthma is well-controlled. (R. 34). Dr. Besen stated that Plaintiff appeared to have a herniated disc, however he does not think that is the crux of her symptoms. Dr. Besen believes "she's got a great deal of description of aches and pains in all joints, but there's never been any even in the exams other than maybe a little decreased range of motion of her neck and back." (R. 34). Dr. Besen indicated that there is no description of swelling of her shoulders, elbows, wrists and fingers. Dr. Besen concluded that she has carpal tunnel syndrome, maybe an ulnar nerve issue, and some evidence of fibromyalgia. (R. 34). He does not believe that Plaintiff meets or equals a listing. Dr. Besen testified that her subjective complaints may indicate fibromyalgia and some limitations. (R. 34-35). He stated that the objective evidence does not indicate any limitations in terms of activities, as all the MRI's are negative. (R. 35-36).

8

Vocational Expert, Nadine Henzes, testified at the December 1, 2005 ALJ hearing. (R. 44).  The ALJ specifically asked the VE to hypothetically consider a forty-one year old individual with a high school education, and some college work, who has not worked outside the home for the relevant time period.  (R. 45).  The ALJ asked the VE to consider someone with Plaintiff's diagnoses and treatment who could occasionally lift ten pounds, frequently lift five pounds; sit for six hours in an eight-hour day; stand and walk two hours a day, but not for prolonged periods of time; and could not bend or reach or do repetitive activities.  The VE testified that such work would be in the sedentary, unskilled level with a sit/ stand option, and that such an individual could perform work in the regional economy. The VE identified the Northeast Pennsylvania labor market as Plaintiff's residence.  (R. 46). The VE identified available jobs in this category as a video monitor, with 200 jobs; a machine tender, with 200 jobs; and a telephone receptionist, with 400 jobs.  (R. 46).  The VE indicated that such jobs would not permit a worker to be absent more than one day per month.

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments."  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added).  In *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (citations omitted).

### B. Plaintiff's medical history.

Plaintiff treated with Raj Katara, M.D., a board certified neurologist on December 1, 2003. (R. 188-90). Dr. Katara performed a neurological examination on Plaintiff and found her mental status was normal, the cranial nerve examination was normal, motor and sensory examinations were normal, coordination and gait were normal, and reflexes were good. (R. 189). The musculoskeletal examination revealed no tenderness in the cervical spine with L5-S1 tenderness and a positive straight leg raising test on her right side at sixty degrees. (R. 190). Plaintiff was able to flex forward and touch her ankles, with some pain. (R. 190). Overall, Dr. Katara assessed cervical myofascial pain with history of C5-C6 herniated nucleus pulposus (HNP), lumbar myofascial pain with possible L5-S1 HNP, and right hip dysfunction. (R. 190).

Plaintiff returned to see Dr. Katara on December 29, 2003. (R. 182). Dr. Katara noted that Plaintiff had a positive ANA test with normal complement levels and a negative HLA-B27 antigen. An EMG and nerve conduction studies of the upper extremities revealed mild bilateral median nerve compression neuropathy of the wrist, worse on the right side, and mild bilateral ulnar distal neuropathy. An MRI of Plaintiff's C-spine revealed degenerative changes with mild canal stenosis at C5-C6 and C6-C7. An MRI of the T-spine revealed disc herniation at T11-T12, multilevel degenerative facet joint and no evidence of disc herniation. An MRI of Plaintiff's hip was normal with a possible ovarian cyst. (R. 182). Dr. Katara thus assessed lumbar myofascial pain secondary to degenerative joint disease (DJD) and paresthesias with bilateral carpal tunnel syndrome. (R. 182). Dr. Katara ordered physical therapy and wrist splints for Plaintiff's carpal tunnel and referred her to a rheumatologist.

Plaintiff's next follow-up with Dr. Katara was in January 2005. (R. 178-79). Dr. Katara noted that Plaintiff had been diagnosed with IBS. He noted that Plaintiff called his physician's assistant complaining of increased lower back pain. Thus, her Mobic dosage was

increased and Plaintiff indicated that this helped her feel "much better." (R. 178). Plaintiff complained of continuing lower back pain, achiness all over and joint pain. Dr. Katara noted that Dr. Malik diagnosed Plaintiff with goiter and advised surgery, though Plaintiff did not undergo surgery. He noted that Plaintiff did not complain of headaches, or bowel or bladder incontinence. Plaintiff complained of numbness and tingling in her hands "that has been old." (R. 178). A neurological examination was normal. A musculoskeletal examination revealed some myofascial paraspinal muscle tenderness around L4-L5. (R. 179). Dr. Katara noted that Plaintiff's compliment levels were normal, an EMG and nerve conduction study of the upper extremity showed mild bilateral median nerve compression neuropathy, worse on the right, and mild bilateral ulnar distal neuropathy. (R. 179). The MRI of the thoracic spine revealed disc herniation at T11-T12 with no disc herniation in the lumbar regions. Dr. Katara's impression was lumbar myofascial pain with history of T11-T12 disc herniation to rule out worsening of the same versus L5-S1 disc herniation; bilateral carpal tunnel syndrome; arthritis and diffuse achiness to rule out zero negative arthritis; and history of goiter. (R. 179). Dr. Katara ordered another MRI, prescribed Lidoderm, and advised Plaintiff to decrease the use of Mobic. Dr. Katara also indicated that he would consult with Dr. Ludivico and advised Plaintiff to follow-up with Dr. Malik and Dr. Falanga.

Plaintiff underwent the follow-up MRI on January 17, 2005. The MRI revealed slight increase size L5-S1 bulge compared to the prior exam and no evidence of new or additional disc herniation. (R. 489).

In March 2005, Plaintiff was again treated by Dr. Katara. (R. 478). Plaintiff reported continued pain mostly in her right lower back radiating to her right hip and right leg, and achiness all over. (R. 478). A neurological examination was normal and a musculoskeletal examination revealed some right side hip pain and right paraspinal tenderness at L5-S1. Dr. Katara's impression was lumbar myofascial pain with L5-S1 disc bulge, right hip pain, diffuse achiness and arthritis work-up as per rheumatologist, and history of goiter. (R. 479).

In January 2005, Plaintiff treated with rheumatologist Charles L. Ludivico, M.D.  (R. 295).  Plaintiff reported a two-year history of some pain in her muscles, joints and almost her whole body.  Specifically, she reported pain in her wrists, fingers, shoulders, knees, neck and side of the hips and described a hot tingling sensation all over.  Plaintiff reported that ten years ago she was paralyzed for about six months.  She also reported that she has had more than fifty percent improvement with Mobic in the previous eight weeks.  (R. 295).  Dr. Ludivico diagnosed mild generalized arthralgias that did not suggest lupus, chronic lumbar degenerative disc disease/ cervical disc disease, diarrhea for fifteen years, thyroid goiter, and history of GERD/ UTI/ heart murmur or rheumatic heart disease.  (R. 296).

In March 2005, Plaintiff had a follow-up visit with Dr. Ludivico.  (R. 294).  Dr. Ludivico noted that Plaintiff underwent a GI work-up that revealed normal stomach with some inflammation of the small intestine.  An examination revealed tenderpoints in the costochondral region, left lateral elbow and medial aspect of the knees, but neck, paracervical, trapezius, sacroiliac, and lateral elbow tenderpoints were negative.  (R. 294).  Dr. Ludivico's diagnosis was generalized arthralgias, chronic diarrhea with probable IBS, and chronic cervical/ lumbar degenerative disc disease.  (R. 294).

In December 2004, Plaintiff treated with Rajesh G. Bhagat, M.D., a board certified allergist-immunologist.  (R. 213).  Dr. Bhagat's impressions were allergic rhinitis due to dust mites, chronic sinusitis, multi-nodular goiter and possibility of carcinoid syndrome and mastocytosis raised based on the history of diarrhea, flushing and headaches.  (R. 214).

On January 10, 2005, Plaintiff was seen for a follow-up visit with Dr. Bhagat.  (R. 211).  Dr. Bhagat's impression was allergic rhinitis due to dust mites and vasomotor component still ongoing despite the use of Zyrtec D.  (R. 211).

Also in January 2005, Plaintiff treated with gastroenterologist Charles F.M. Cohan, D.O., for bowel complaints.  (R. 259-60).  Dr. Cohan's assessment was IBS with predominant diarrhea, improving; lower abdominal pain, stable with Levsin;

gastroesophageal reflux disease, stable on Nexium; and dysphagia and odynophagia to both solids and liquids. (R. 260). An enteroscopy performed in February 2005 revealed no abnormalities and a colonoscopy in November 2005 revealed no abnormalities. (R. 239-40, 507-08).

Plaintiff also treated with Natale Falanga, M.D., for upper respiratory infections. (R. 225-37, 246). An initial screening test suggested lupus, however subsequent tests were negative for lupus. (R. 227). In June 2005, Plaintiff had follow-up visits with Dr. Falanga. Dr. Falanga's impressions were upper respiratory infection with bronchospasm; asthma/ reactive airways disease; and multiple joint arthralgias with a low titer ANA, allergies and asthma, and reactive airways disease. (R. 496, 498, 500).

A Disability Determination Service (DDS) physician completed a Residual Functional Capacity (RFC) Assessment in February 2004. (R. 80-88). The DDS physician's primary diagnosis was cervical myofascial pain with history of HNP. (R. 80). The doctor found that Plaintiff could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; and stand and/or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday. The doctor found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations and no environmental limitations. The doctor ultimately found the Plaintiff only partially credible. (R. 86). The doctor completed the RFC Assessment without a statement from a treating or examining source regarding Plaintiff's physical capacities. (R. 84).

## V.  DISCUSSION.

### A.  Whether the ALJ erred in relying upon the opinion and testimony of the medical expert, Dr. Lee Besen.

The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although she must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings,

the more weight [the ALJ] will give that opinion.  20 C.F.R. § 404.1527(d)(3).  While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion.  20 C.F.R. § 404.1527(d).  Automatic adoption of the opinion of the treating physician is not required.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Here, the Plaintiff argues that the ALJ erred by accepting the opinion of the medical expert, Dr. Besen.  (Doc. 8 at 12-13).  Plaintiff asserts that Dr. Besen's testimony was unprofessional and perhaps biased.  However, Plaintiff acknowledges that the ALJ "makes little reference to the testimony of Dr. Besen."  (Doc. 8 at 12).  The ALJ merely states that Dr. Besen indicated that the claimant's medical record did not establish any firm diagnoses, though her problems appeared to be rheumatological in nature.  (R. 16).  The ALJ appears to have briefly considered Dr. Besen's testimony, in addition to considering all other evidence of record.  A medical expert, such as Dr. Besen, is purposely obtained to provide an objective, unbiased medical opinion.

Plaintiff failed to present any evidence from her physicians that she was disabled or that she was restricted in any way from working.  At the conclusion of the supplemental ALJ hearing, the ALJ kept the record open to allow the Plaintiff time to submit additional medical evidence from Dr. Ludivico regarding Plaintiff's limitations.  (R. 49).  The Plaintiff failed to do so.  The Regulations state that when the evidence "from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision."  20 C.F.R. § 404.1512(e).  Here, the ALJ did not find that the evidence was inadequate.  The ALJ found there was adequate evidence available to render a decision.  We agree, particularly noting that the ALJ kept the record open per the Plaintiff's request to permit the Plaintiff time to submit additional evidence.  We find sufficient reason in the ALJ's decision for referencing the opinion of Dr. Besen and find that the ALJ did not err by accepting the opinion of Dr. Besen.

**B. Whether the ALJ misconstrued the medical record in determining that Plaintiff maintained the residual functional capacity to perform sedentary work.**

The ALJ evaluated Plaintiff's subjective complaints along with the objective medical evidence. In her decision, the ALJ summarized Plaintiff's testimony at the hearings regarding her subjective allegations of pain, all of Plaintiff's daily activities, and her subjective complaints to doctors. (R. 16). The ALJ stated that she must consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." (R. 16).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p.

The ALJ determined that Plaintiff had the RFC for sedentary work. (R. 16-17). The ALJ found that Plaintiff could "sit six out of eight hours, stand and walk two out of eight hours, lift 10 lbs occasionally, five pounds frequently, to perform no bending or extensive reaching, to have a sit/stand option, and to be limited to one to two step jobs." (R. 17). The DDS physician completed a RFC Assessment and determined that Plaintiff could occasionally lift and/ or carry fifty pounds; frequently lift and/ or carry twenty-five pounds; and stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday. The ALJ's findings were thus reduced from those of the DDS physician.

As the Defendant points out, the ALJ acknowledged that Plaintiff suffers from diarrhea, however the ALJ found the Plaintiff not entirely credible regarding the frequency of the symptoms. (Doc. 9 at 18) (R. 14, 16). A February 2005 enteroscopy revealed no abnormalities and a colonoscopy in November 2005 revealed no abnormalities. (R. 239-40, 507-08). Additionally, as stated *supra*, the Plaintiff failed to present any evidence from her physicians that she was disabled or that she was restricted in any way from working.

We find that the ALJ adequately considered all of the evidence in the record, including Plaintiff's daily activities and subjective complaints. Based on the foregoing, we find that the ALJ properly considered the medical evidence and properly determined that Plaintiff is capable of performing sedentary work.

### C. Whether the ALJ erred in failing to find that Plaintiff's testimony was credible with regard to her limitations.

Plaintiff alleges that, in finding her not disabled, the ALJ erred by discounting and not adequately considering the objective evidence of record. (Doc. 8 at 17). We disagree, and find that the ALJ engaged in a proper credibility determination.

When considering a claimant's subjective complaints of pain, an ALJ must engage in a two-step analysis. First, an ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the

intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work.  *See Diaz v. Commissioner of Social Security*, 39 Fed. Appx. 713, 714 (3d Cir. June 12, 2002).

At the same time, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985).  Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter, 834 F.2d at 65; *Ferguson, 765 F.2d at 37).

The ALJ thoroughly examined all of the evidence presented to her.  She reviewed the medical records and the treating and examining physicians' notes.  She also considered Plaintiff's testimony regarding her pain and daily activities and capabilities.

Based on the evidence presented and the testimony at the hearing, the ALJ found the Plaintiff not entirely credible.  (R. 17).  "'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'  *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).  An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony.  *Id*.  Yet subjective complaints, without more, do not in themselves constitute a disability.  *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).  Here, the Plaintiff's subjective complaints were not borne out by her medical records.

The ALJ pointed to both medical evidence and evidence of the Plaintiff's activities of daily living which contradicted the Plaintiff's claims of total disability.  The ALJ concluded that the medical record did not substantiate the extent of the Plaintiff's subjective complaints.  (R. 17).  She is able to walk down the street and walk the mall without stopping.  (R. 71-72).  Plaintiff testified that she is able to lift and carry as much as a gallon of milk, though at times it is painful to do so.  (R. 72).  Plaintiff testified that she is able to sit for fifteen to thirty minutes at a time.  (R. 71).  Plaintiff also testified that she cares for her five children at home.  (R. 68).  She stated that she prepares them breakfast, sees them off to school and then stays home with her youngest child.  (R. 68).  Plaintiff acknowledged that she has trouble with vacuuming, scrubbing the floors, cooking and walking the dogs.  (R. 66-67).  However, she testified that she does the laundry, changes the sheets on the bed, does the grocery shopping, with some help, and cooks most of the time.  (R. 68-69).

The ALJ noted that Plaintiff has five children and does not have many demands upon her.  (R. 16).  The ALJ noted that no doctor ever found Plaintiff to be disabled and no physician has ever limited her in any activities.  (R. 16).  Additionally, the ALJ found that Plaintiff failed to seek consistent treatment and failed to follow suggestions from her doctors.  (R. 17).  Based on her capabilities and the medical evidence of record, the ALJ found that the symptoms the Plaintiff described are not wholly credible.  (R. 16-17).

The ALJ did not ignore the allegations of Plaintiff's pain.   Rather, she acknowledged Plaintiff's testimony regarding the pain.  She then found the Plaintiff not wholly credible for the reasons previously stated.

## VI. RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be DENIED.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 19, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI E. LONG, | : | CIVIL ACTION NO. **3:CV-06-578** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated July 19, 2007.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

_____magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____    **s/ Thomas M. Blewitt**
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**

**Dated: July 19, 2007**